## WALTER a. POST.

*New York Superior Court; General Term, February*, 1857.

INJURY TO BUILDINGS.—ACTION BY TENANTS.—EVIDENCE.—MEASURE OF DAMAGES.

Of the rules of evidence applicable in an action by the tenant of a building against the owner of adjoining premises, to recover for injuries to plaintiff's building in consequence of excavations, &c., negligently made by defendant on his own premises.

In an action by the tenant of a building against the owner of adjoining premises to recover for injuries to plaintiff's building, through the removal of the division wall by defendant, it is a sufficient defence to prove words or acts of plaintiff from which a consent on the part of plaintiff to the removal of the wall may be inferred.

It is erroneous in such case for the judge to refuse to charge the jury that it is not necessary for the defendant to prove an *express* consent; and for him to charge that he must prove " a clear and express consent."

A license may be proved by parol; and it may not only be inferred from the acts of the parties in connection with the silent acquiescence of the plaintiff, but such acquiescence may enure as a license by estoppel when the other requisites to create an estoppel in pais concur.

A tenant for a term of years, injured in his possession by excavations, &c., made in a wrongful manner by the owner of adjoining premises, is entitled to be compensated for all the injury done to his possession; and in ascertaining this the expense necessary to restore the building to a state such as would make that possession as beneficial to the tenant as it was before the trespass was committed, should be allowed.

But such allowance should not exceed the value of plaintiff's term, taking into view the rent reserved.

But where in an action for such a trespass it appears that by the terms of the tenancy the plaintiff is bound to make repairs, and to restore the premises to the landlord at the end of the term in as good a condition as when they were leased, then the defendant is bound to enable the plaintiff to put the building in as good a condition as it was when the trespass was committed.

In what cases loss of expected profits may be recovered for, in such an action.

Appeal from a judgment in favor of plaintiff upon a verdict.

The complaint in this action alleged that the plaintiff was the lessee of a house and premises in the city of New York for the term of *eight years*, from May 1, 1852, and that since that date he had used and occupied, and still used and occupied, the first floor as a merchant tailor's store; and that he

Walter a. Post.

also used and occupied during the same period the yard and rear part of the said premises, and had hired and rented the basement to other persons, who used and occupied them for various purposes.

It then alleged that on or about June 15, 1856, the defendant, by himself and his agents, workmen, &c., &c., broke down and destroyed the southerly wall of the building, inserted beams into the house, and dug up the earth in the yard and carried away portions thereof, and built a wall upon the premises ;— entered the hall of the house and into the basement, and did various other injuries, which it is unnecessary here to state in detail ; and did thereby greatly obstruct the ingress and egress of the plaintiff's customers, and did prevent many customers from entering, and did compel the plaintiff to abandon his residence in the said house, and subjected him to various and heavy expenses, and continued in the commission of the said trespasses for three months from, &c., &c.

That the plaintiff had been thereby deprived of the use of his house, &c., for the period of three months, and had lost and been deprived of sums of money due for the rent of divers portions of the premises ; and the goods, &c., were much injured by dust and exposure ; the plaintiff's trade was injured, his profits diminished, &c., &c., to his damage $5000.

The answer of the defendant set up title in the adjoining lot ;— the plaintiff's arrangements and contracts for building thereon ;— the discovery on the removal of the defendant's old building ;— that the foundation wall was one-half upon each lot, so that, below the surface, it supported the walls of both buildings ;—that, on notice to the plaintiff, and a proposal by the plaintiff that he would remove the old wall, and erect a new wall upon the lot occupied by the plaintiff sufficient to support the plaintiff's building, and would also restore the basement of the plaintiff's house to its original condition within a reasonable time, and in the mean time would shore up and sustain the plaintiff's said building, the defendant expressed his satisfaction, and desired that the same be done as soon as practicable. It then averred the careful and proper performance of the work at large expense, and claims that, as it was done at the plaintiff's request, when, as averred, it was his duty to do the same himself, he was justly indebted to the defendant therefor.

In relation to the excavation of the yard, the answer averred notice to the plaintiff, and claimed that it was his duty to support the earth, and prevent its falling into the excavation there made on the defendant's lot only. It also alleged his neglect to do so ;—that the earth in consequence fell in and upon the defendant's lot to his damage, &c.; and that as to the basement, the injury, if any, was to the tenants and not to the plaintiff.

The answer denied the other allegations.

To so much of the answer as alleged any request by the plaintiff, and to all that is alleged as a ground of any counter-claim, the plaintiff replied by a general denial.

There were other allegations in the pleadings ; but enough is here stated to make the questions raised on the appeal intelligible.

To various rulings on the trial exception was taken by the defendant, which are sufficiently explained in the opinion of the court.

*E. J. Phelps*, for the appellant.

*James W. Gerard*, for the respondent.

By the Court*—Woodruff, J.—On the trial of this cause the plaintiff called a witness and examined him respecting the description of the building occupied by the plaintiff, its interior arrangements, its condition, occupation, and manner of use at, and immediately prior to, the time when the work complained of was begun by the defendant; and the witness proceeded to describe particularly the excavation made by the defendant; the introduction of the beams into the basement of the premises, when they were put in, and how long certain of the alleged grievances continued ; and was proceeding to state how many beams were inserted, their height and their position, &c., when the defendant's counsel objected to any evidence as to damages to the basement, as it appeared that they were underlet, and his objection being overruled, he excepted.

We think there was in this ruling no error. Had the testimony tended to no purpose but to show what damages the tenants had sustained, the objection would have been well taken.

* Present, Duer, Bosworth, and Woodruff, JJ.

Walter *a.* Post.

But the testimony was a part of the history of the defendant's acts tending to the injury of the entire building—it was a part of the *res gestœ*—it would have been an imperfect and unfair statement of the transactions to state that the defendant removed the foundation wall, without at the same time stating what he did to sustain the wall above, and how he did it. Its imperfections, or its only partial adequacy, might be the very subjects for the consideration of the jury; and although the effect of what was done, upon the plaintiff and his business, was the ultimate end and object of the investigation, these details we think clearly relevant and proper.

Besides, although the basement was let to other tenants, the plaintiff himself occupied the rear building, and there was a basement hall at the side of the building, across which the beams were inserted; and it appeared that this hall was used, as well as the hall on the first story, for access to the rear building, and for various other purposes, by the plaintiff himself and his family. Its obstruction was therefore an immediate injury to the plaintiff, proper to be considered by the jury; and a staircase was shown to have been removed, which led from that basement hall to the first story, which the plaintiff occupied as a store. If there was any evidence given subsequently, which tended to show the damages which were sustained exclusively by the tenants, no objection was made, and the attention of the court was in no wise called to it. The *general* objection above stated cannot, we think, be sustained.

In the course of the examination of another witness, another general objection was stated by the defendant's counsel, which appears in the case thus: " the defendant's counsel objected to testimony as to the general injury to the walls and building," which objection was overruled, and exception taken.

· To what question this objection was addressed does not appear. The testimony of the witness which follows immediately after such ruling is this: " The water was running down the wall, and tubs were set on the floor to catch the water." The witness was describing the condition of the building after the alleged trespass.

This exception was not urged on the argument of the appeal, and we do not discover any thing in it which requires extended discussion. If we regard the form of the objection, it was

clearly untenable. The general injury to the walls and building, in connection with the effect of that injury upon the plaintiff and his business, were (if the defendant's acts were shown to be wrongful) the very subject of inquiry. Whether and to what extent the plaintiff should be allowed for cost of repairing the injury, was another and distinct question.

What the defendant meant by "general injury" is not very apparent. If he intended by that that the plaintiff's counsel should point his questions, and the witness address his answers to a distinct specification of each particular place, and particularize wherein the premises were injured, and their occupation rendered less valuable to the plaintiff, this is not sufficiently indicated by the objection.

If he meant that the injury to the walls and building could not be considered by the jury in determining how far the occupation of the plaintiff was interfered with and rendered less valuable, it was clearly untenable. We might perhaps say that the objection was too vague and indefinite, and was properly overruled on that ground; but we do not perceive how, in any aspect, the objection could be sustained.

Some other exceptions were taken to the admission of evidence, and an exception also to the refusal of the judge to order a dismissal of the complaint, but they were not urged on the argument of the appeal, nor referred to on the points which he submitted; and we may dismiss them with the remark, that we concur with the defendant's counsel in the opinion that they furnish no ground for a reversal of the judgment.

. It is stated in the case made for the purposes of the appeal, among other requests made by the counsel, for specific instructions to be given by the court in the charge to the jury, that the. defendant's counsel requested the judge to charge,—

"That it was not necessary for the defendant to prove the *express* consent of the plaintiff for him (the defendant) to take down and remove the old division wall, but that the plaintiff's consent might be inferred from his acts; and if the jury believed from the evidence that the plaintiff did consent to the taking down and removal, &c., of the wall by the defendant, he cannot recover any damages therefor." And the case adds: "But his honor *declined so to charge*, and instead thereof charged the jury, that unless the defendant had proved a clear and *ex-*

Walter *a.* Post.

*press* consent on the part of the plaintiff that the defendant might remove the wall, the plaintiff was not precluded from recovering in this action any damages resulting to him therefrom."

To this is also added, " that merely submitting to its being taken down, without attempting to prevent it, *from an erroneous opinion that the defendant had a right* to remove it, would be no bar to this action. If there was a clear and *express* consent that it might be pulled down, there can be no recovery in this action ; but unless *such a consent* was given, the plaintiff is entitled to recover."

To the refusal above stated, and to this part of the charge given, as stated, " instead thereof the defendant's counsel excepted." A slight modification of this part of the charge appears in a subsequent portion thereof, in which the judge appears to have said : " If the *jury believe* that it was *clearly* and *distinctly* agreed between the plaintiff and defendant that the defendant might remove the wall and insert his needles, and that he should restore the building to a proper condition, there can be no recovery in this action." And again it is added : " But if *each party supposed* that the defendant had a *legal right* to remove the wall and insert his needles, and the defendant did no more than submit to what he *at the time supposed* he could not prevent, and *had no right to object to*, that is not such an assent as bars his right to recover."

The claim set up in the defendant's answer, and the purpose and tendency of much the greater portion of the testimony given on his behalf, were to show that the plaintiff not only acquiesced in what was done without objection, but that there was a mutual understanding between him and the defendant amounting to an agreement that the defendant might remove the wall, and should rebuild it, and restore the plaintiff's building to the condition in which it was before the work was commenced. The acts of both parties were relied upon (in the absence of the testimony of any witness who heard any express agreement), as tending to show that such an agreement existed ; and it was insisted that enough was proved to warrant the jury in finding that, in truth, the plaintiff gave a sufficient license to justify the defendant in removing the wall, and sustaining the building by beams or needles in the manner he did.

Were there nothing in the charge on this subject other than

the instruction above recited, that " if the jury believed that it was *clearly* and *distinctly*. agreed," &c., it might perhaps be regarded as a submission to the jury of all the facts and circumstances disclosed by the evidence, including all the acts of the parties, with the absence of any objection by the defendant, and as leaving to them to say whether such an agreement existed, and if an *agreement* was necessary to the defendant's protection in the sense in which it was used in the charge, the addition that they must also find that it was a *clear* and *distinct* agreement, would not be material. It does not occur to us that in reference to a single point under discussion, any thing but a clear and distinct agreement can properly be called an agreement. But although this latter portion of the charge, as well as the whole current of the evidence received from the defendant on the trial, seems to us to indicate that the judge rightly appreciated the rule which undoubtedly permits the jury to infer the existence of an agreement, or a consent from the acts of the parties, or other circumstances, though no witness is introduced who can testify in terms to an express agreement or consent, yet the refusal to charge that it was not necessary for the defendant to prove an express consent, but that such consent might be inferred from his acts, remains in the case not only unexplained and unqualified, but is followed by the instruction that unless a clear and *express* consent was proved, the plaintiff is not precluded, &c.

We all concur in saying that if the jury should find from the evidence that the plaintiff actually consented to the acts of which he now complains as a trespass upon his premises, he is not entitled to recover from the defendant. A license is always a sufficient justification of a trespass, and the books are full of pleadings and precedents, in which it is treated as a complete defence. And we are equally clear that a license not being required to be in writing, it may be proved, like any other similar fact, by showing express words of license, or by proof of the acts of the parties, and other circumstances, from which the jury may infer that the plaintiff consented to the alleged trespasses.

We also think that the further instruction above recited, that merely submitting to the taking down of the wall from.an erroneous opinion that the defendant had a right to remove it, would be no bar to the action—which was somewhat more explicitly repeated as not warranting the inference that the plaintiff as-

sented to what was done, if each party supposed the defendant had a legal right to do what he did—if not clearly erroneous, was calculated to mislead the jury.

There may undoubtedly be a submission to a wrong done under the assertion of a right, and in spite of the plaintiff's dissatisfaction—a silence where remonstrance is seen to be futile—which could in no wise be regarded as either license or assent. But, on the other hand, a standing by, without objection, when a trespass is committed, by one who is at the time acting not wilfully, but in the belief that he is doing what he has a right to do, may and often will in legal effect operate as a license. It is such an acquiescence as estops a party afterwards to complain of the trespass, when the other party acts in known reliance thereon. This subject is noticed in the opinion of this court in the case of Miller *a*. Davis at the February general term, 1856.

A license may be given and proved by parol; and it may not only be inferred from the acts of the parties in connection with the silent acquiescence of the plaintiff, but such acquiescence may enure as a license by estoppel, when the other requisites to create an estoppel *in pais* concur: and we are not aware that in either case the ignorance of the plaintiff of his legal rights can alter the effect or prejudice the defendant.

We might dispose of the present appeal without examining the other questions discussed on the argument; but it may be important for the purposes of the new trial, which must be ordered, that they should be disposed of.

The defendant requested the judge to charge that the plaintiff could not recover for injuries to the freehold, because there is no allegation in the complaint that he (the plaintiff) is responsible to the owner of the freehold for injuries to the premises committed during the continuance of the plaintiff's term. And the case states that his honor declined so to charge, otherwise in respect thereto than is contained in the charge actually given, viz.: " With respect to injuries to the building itself, the plaintiff is entitled to recover what it would cost to put it in a suitable position for the use before made of it." " That the plaintiff would be entitled to recover sufficient to put the building in as good condition as *when he hired it*, natural wear and tear excepted."

The want of harmony between these two propositions suggests the doubt whether in making up the case some mistake has not occurred which was not corrected on the settlement; and this doubt is strengthened by another statement in the case, which, if true, would show that the plaintiff's lease, with the covenants therein, was not given in evidence at all on the trial; and that the covenants therein, which it is claimed made it the duty of the plaintiff to repair, were not even offered in evidence by the plaintiff. The plaintiff had been in the occupation of the premises for more than two years when the alleged trespasses were committed. We cannot think that the plaintiff claimed, or the judge intended to be understood, that under any view of the plaintiff's duty to his landlord he could recover for any thing more than the injury done to the building by the *defendant*. In respect to this item, all that he could ask was an amount sufficient to put the building in as good a condition as it was before the trespass was committed. The defendant was not bound to answer for injuries sustained in any manner, whether by natural wear or otherwise, during the previous two years.

In regard, however, to the question raised by the defendant's request, we apprehend there is no doubt about the true rule. As tenant for a term of years, the plaintiff had a right to be compensated for all the injury done to his possession; and in ascertaining this, the expense necessary to restore the building to such a state as would make that possession as beneficial for the purposes of the tenant as it was before the trespass was committed, should be allowed; but with this limitation, that such allowance should not exceed the value of the plaintiff's term, including the rent he was bound to pay. The limitation stated is necessary, for if the defendant had torn down the entire building, or otherwise driven the plaintiff therefrom, he could (apart from the question whether exemplary damages should be allowed) only recover the value of that possession of which he was deprived.

Had it appeared, however, that by the terms of the tenancy, the plaintiff was bound to make repairs and restore the premises to the landlord at the end of the term in as good condition as when they were leased, then the defendant was liable to make good all the injury caused by the trespass, and enable the plaintiff to put the building in as good condition as it was when the

Walter a. Post.

trespass was committed. We incline to the opinion that the allegations in the complaint are sufficient to entitle the plaintiff to show that such were the terms of his lease, and claim damages accordingly, and that the question appertains to the measure of damages; and yet the question is not free from doubt. There is not only no averment that the plaintiff was bound to repair, but it is not even stated that he was put to any expense in repairing, or that he made any repairs. The doubt, if any there be, on the sufficiency of the complaint in this respect, can easily be removed by amendment, which would probably have been allowed on the trial had it been sought by the plaintiff's counsel. He may perhaps be advised to seek such amendment before another trial.

The defendant insisted on the trial that the plaintiff could not recover for damages sustained by loss of business, because he had given no evidence of any such loss; and the counsel on the argument of the appeal add, as a further reason, that such damages, if sustained, are too remote to be the subject of recovery.

We have had occasion recently to consider this latter proposition in the case of St. John v. The Mayor, argued at the December general term, and decided at the present term (February 14th), in which we held that in actions to recover against a tortfeasor, the loss of profits may be taken into view in estimating the damages, though in actions for a breach of contract the general rule is otherwise. (See Fink v. Brown, 13 *Wend.*, 601; Fitch v. Livingston, 4 *Sandf.*, 514; Wilkes v. The Hungerford Market Company, 2 *Bing. N. C.*, 281; Iverson v. Moore, 1 *Lord Raym.*, 486; La Cour v. The Mayor, &c., 3 *Duer*, 406.) This does not necessarily embrace a right to recover purely contingent or speculative profits, but will warrant the recovery for such losses as are proved to be the direct consequence of the wrong which is to be redressed.

The proof on the subject given by the plaintiff on the trial was at most exceedingly slight. The only testimony we find in the case as settled, that appears to bear upon this claim, is that of a witness who testifies that he "had nothing else to do but keep brushing and dusting goods all the time. We had cloths, silk velvets, and all kinds. The wall was left open about three months. I (he) remained there nights and watched—the front

door had two beams in it, &c.—the light goods were injured and spotted with dust."

We do not think that in an action in which the damages are not fixed and certain, and upon proofs such as were given, the whole question of injury to the plaintiff's business should have been withdrawn from the consideration of the jury. But it was proper to instruct them that the plaintiff could not recover for any loss resulting from the interruption of his business without proof that his business was interrupted; nor for any loss in his business, without proof of such loss; nor for any greater loss than was proved. We think the language of the charge was substantially to that effect, though we are free to say, that beyond some evidence of injury to the goods, and of increased expense or trouble in taking care of them, no such loss was shown.

It only remains to notice what was said by the judge in relation to sheath-piling, and in the refusal to charge that the plaintiff was not bound to sheath-pile and support the premises and soil of the plaintiff. Although one who excavates his own soil is not under an affirmative duty to protect his neighbor's soil from falling, he may not conduct his excavation so heedlessly or recklessly as to unnecessarily cause injury to his neighbor (Radcliff's Executors v. The Mayor, &c., 4 *Comst.*, 195, 203); and on the other hand, the neighbor, having received due notice, should, if he desire to support his own soil, resort to the proper means of doing so. He may not be liable, and we think is not himself liable, if he chooses to neglect this precaution. The one who digs away his own soil, and so by the operation of the laws of nature merely draws upon himself his neighbor's soil or sand, must, we think, submit to the inconvenience; and he has, we think, his election to do so, or to protect himself by sheath-piling or otherwise, as he may be advised.

The judgment must be reversed, and a new trial ordered; with costs to abide the event.